RICHARD L. HOLMES, Retired Appellate Judge.
On April 13, 1992, Joseph T. Smith, Jr. (employee), was fatally electrocuted while in the line and scope of his employment with Asplundh Tree Expert Company (Asplundh or employer).
In March 1994, pursuant to Ala.Code 1975, § 25-5-11, the employee’s widow, Tina L. Smith, filed suit on behalf of herself and their four dependent children. Smith filed the complaint against Alabama Power Company (Alabama Power); Don Glass, a general foreman for the employer; and certain fictitious defendants. In September 1994 Smith amended the complaint to substitute Duane Lewis, the employee’s crew foreman on the date of the accident, as a defendant.
Lewis filed an answer to the amended complaint. Thereafter, Glass and Lewis filed a joint motion for a summary judgment, along with briefs and evidentiary materials in support of their motion. Smith filed briefs and evidentiary materials in opposition to the summary judgment motion.
In December 1995 the trial court granted the summary judgment motion in favor of Lewis. We would also note that this order granted the summary judgment motion in favor of Glass, by agreement of the parties, and denied a summary judgment motion filed by Alabama Power. In January 1996, pursuant to Rule 54(b), Ala. R. Civ. P., the trial court certified the summary judgment in favor of Lewis as final for purposes of appeal.
*1319 Smith appeals the summary judgment entered in favor of Lewis. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
On appeal Smith argues that the trial court committed reversible error when it granted the summary judgment motion in favor of Lewis. As a basis for her action against Lewis, Smith contends that Lewis engaged in “willful conduct” in the following manner: After observing the employee’s breach of the “separation” distance established by the As-plundh Foreman’s Manual and OSHA regulations, Lewis failed to request that the power line be de-energized or insulated before the cutting or trimming work continued.
Smith maintains that there existed a genuine issue of a material fact as to whether Lewis’s conduct on the date of the accident constituted willful conduct, as defined by Ala. Code 1975, § 25-5-ll(c)(l). We would note that Smith admitted in one of her briefs before the trial court that she was not relying on the definition of “willful conduct” as contained in Ala.Code 1975, § 25-5-ll(c)(4), which concerned willful and intentional violation of a safety rule.
Our supreme court stated the following in Reed v. Brunson, 527 So.2d 102, 119-20 (Ala.1988):
“Under § 25-5-11, an employee may be liable in damages for the death of, or injuries sustained by, a fellow employee; however, such liability can be based only on injury or death proximately caused by the offending employee’s ‘willful conduct.’ ”
“In § 25-5-14 the Legislature expressed concern over the rising costs of litigation among co-employees, as well as the disruptive effect that such litigation can have on workers. That concern indicates to us that the Legislature intended for an injured plaintiff to prove more than simply that he was compelled to work under circumstances that posed a foreseeable risk of harm to him or others (or circumstances from which harm could likely or even probably result), in order to maintain his action based on the ‘willfulness’ of a co-employee defendant. To the contrary, we believe the Legislature sought to insure that these kinds of cases would not be submitted to a jury without at least some evidence tending to show either 1) the reason why the co-employee defendant would want to intentionally injure the plaintiff, or someone else, or 2) that a reasonable man in the position of the defendant would have known that a particular result (i.e., injury or death) was substantially certain to follow from his actions. (A purpose, intent, or design to injure another was not intended to be reasonably inferable from evidence showing only knowledge and appreciation of a risk of injury or death short of substantial certainty that injury or death would occur.) We think it is safe to say that negligent, or even wanton, conduct is much more prevalent in the work place than conduct actually intended to cause injury or death. We think the Legislature has recognized this also, and, in so doing, has placed upon an injured worker a heavier burden in proving a purpose, intent, or design to injure on the part of a co-worker. This comports with the manifest intent of the Legislature that litigation among co-employees be restricted to those situations in which the plaintiff can show something more than what is usually sufficient to make out a ease of negligence or wantonness.”
(Emphasis in original.) •
Section 25-5-ll(c)(l) provides the following:
“(c) As used herein, ‘willful conduct’ means:
“(1) A purpose or intent or design to injure another; and where a person, with knowledge of the danger or peril to' another consciously pursues a course of conduct with a design, intent and purpose of inflicting injury, then he is guilty of ‘willful conduct.’ ”
We would note that this accident occurred prior to May 19, 1992, the effective date of the 1992 amendment to the Workers’ Compensation Act. The quoted material is from the old Workmen’s Compensation Act. We would further note that the 1992 amendment did not make any substantial change in the quoted material.
*1320 Our supreme court made the following statement in Reed, 527 So.2d at 119, while discussing § 25-5-ll(c)(l):
“The plaintiff need not show that the co-employee defendant specifically intended to injure the person who was injured. What must be shown, however, is that the co-employee defendant set out purposefully, intentionally, or by design to injure someone, and that his actions in furtherance of that purpose, intent, or design, resulted in, or proximately caused, the injury or death upon which suit was brought.”
(Emphasis in original.)
Reed, 527 So.2d at 119-20, also contains the following pertinent statements:
“In defining “willful conduct’ in these terms, the Legislature recognized the clear distinction that has developed in Alabama between “wanton conduct’ and “willful conduct’:
“ ‘ “Wantonness” ’ is the conscious doing of some act or the omission of some duty under knowledge of existing conditions [while] conscious that from the doing of such act or omission of such duty injury will likely or probably result.
“ ‘ “Wilfulness” ’ is the conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury.
“Alabama Pattern Jury Instructions: Civil 29.01 (1974).”
Our review of the record reveals the following pertinent facts: The Asplundh Foreman’s Manual states that the “appropriate protective devices” shall be installed “[w]hen conditions require the worker to get closer than 2 feet to high voltage conductors.” (Emphasis added.) Lewis maintains that because conditions on the date of the accident did not require the employee to breach the minimum separation distance, the installation of protective devices was not required.
In his affidavit Lewis stated the following, in pertinent part:
“[A] power line is not required to be de-energized or insulated every time the line happens to be within two (2) feet of the tree. It is common practice for workers to safely trim trees in this instance by positioning their body so that they are working outside the minimum separation distance.”
In his deposition Lewis testified that on the date of the accident, the tree could have been “taken down” without the employee ever breaching the minimum separation distance. Lewis also testified that he had previously observed the employee “take down” trees similarly situated without ever breaching the minimum separation distance.
Lewis testified to the following in his deposition:
“A: [The employee] had moved around to the side of the tree, and that was putting him too close to the line. And I had told him that he was too close, that he needed to get back on the back side of the tree like he was.
“Q. Okay. How close was he?
“A. He was within an eighteen- to twenty-inch distance.
“Q. He was within minimum clearance?
“A. Yes, sir, he was.
“Q.... When you observed him and he was eighteen to twenty inches from the line, you said you told him to move back?
“A. Yes, sir.
“Q. What did he do?
“A. He — I stayed there and looked at him when I told him that, and he moved.
“Q. Okay.
“A. He said yes, sir, boss. Yes.
“Q. And he moved?
“A. Yes, sir.
“Q. Then what did you do?
“A. After I seen that he had moved and was fixing to pull his saw back up, I turned around and was going to head back to what I was doing.”
As previously noted, Smith filed documents in opposition to the summary judgment motion. One of these documents was the affidavit of Samuel Hand, an expert retained to *1321 render an opinion on Lewis’s “willful” conduct on the date of the accident. Smith contends that her expert’s affidavit creates a genuine issue of a material fact regarding Lewis’s “willful” conduct. However, we have reviewed the expert’s affidavit and find that it does not create a genuine issue of a material fact regarding Lewis’s “willful” conduct.
In light of the above, Smith failed to meet her burden of establishing a “purpose or intent or design to injure another” on the part of Lewis. Stated another way, Smith presented no evidence to establish that Lewis’s conduct on the date of the accident rose to the level of “willful.” Consequently, we affirm the summary judgment in favor of Lewis.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of Ala.Code 1975, § 12-18-10(e).
AFFIRMED.
All the judges concur.